## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| U.S. SPECIALTY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 5232 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| VILLAGE OF MELROSE PARK, RONALD ) | |
| SERPICO, SAM PITASSI, MICHAEL ) | |
| CASTELLAN, STEVEN ROGOWSKI, and ) | |
| JOHN SCATCHELL, ) | |
| ) | |
| Defendants. ) | |

## <u>OPINION AND ORDER</u>

In this coverage action, Plaintiff U.S. Specialty Insurance Company ("USSIC") seeks a

declaration that it has no duty to defend or indemnify its insureds, the Village of Melrose Park,

Ronald Serpico, Sam Pitassi, Michael Castellan, and Steven Rogowski (the "Village

Defendants"), in the underlying lawsuit captioned *Scatchell v. Village of Melrose Park*, No. 18 C

3989 (N.D. Ill.).[1]  USSIC relies on an exclusion in the applicable insurance policy that bars

coverage if the underlying lawsuit derives from facts or circumstances known to the Village

Defendants prior to the policy's effective date or that formed the subject of a prior administrative

or regulatory proceeding.  The Village Defendants filed a counterclaim, asking the Court to find

the exclusion unenforceable.  The parties have filed cross-motions for judgment on the

pleadings.  Because the exclusion is enforceable and applies to the facts presented by this case,

the Court concludes that USSIC does not have a duty to defend or indemnify the Village

Defendants in the underlying lawsuit.

---

[1] USSIC also named John Scatchell, the plaintiff in the underlying lawsuit, as a Defendant, but it
thereafter moved to dismiss Scatchell because he agreed to a stipulation binding him to the final judgment
in this case.  *See* Doc. 36.  In light of this stipulation, the Court grants USSIC's motion and dismisses
Scatchell from this case.

# BACKGROUND[2]

## I.      The USSIC Policies

As relevant here, USSIC has issued two insurance policies to the Village that potentially provide coverage to the Village Defendants for the underlying lawsuit: (1) Policy No. PKG80210705, effective from December 22, 2016 to December 22, 2017 (the "2016-2017 Policy"); and (2) Policy No. PKG80310705, effective from December 22, 2017 to December 22, 2018 (the "2017-2018 Policy"). The 2016-2017 Policy and the 2017-2018 Policy are materially identical. Among other things, the 2016-2017 and 2017-2018 Policies provide Employment Practices Liability Coverage ("EPL Coverage") on a claims made and reported basis.

Section I.A of the EPL Coverage provides, in relevant part:

> 1. We will pay those sums that the insured becomes legally obligated to pay as "damages" because of an "employment practices wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages", even if the allegations of such "suit" are groundless, false or fraudulent. However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any "employment practices wrongful act" and settle any "claim" or "suit" that may result.
>
> . . . .
>
> 2. This insurance applies to "damages" only if: . . .
>
> b. The "employment practices wrongful act" is first committed after the retroactive date and before the end of the Policy Period listed in the Declarations;
>
> c. The "claim" for "damages" is first made against the insured during the Policy Period listed in the Declarations, or if applicable,

---

[2] In resolving the parties' cross-motions for judgment on the pleadings, the Court considers USSIC's complaint, the Village Defendants' answer and counterclaim, USSIC's answer to the counterclaim, and the exhibits attached to these pleadings. *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452–53 (7th Cir. 1998).

any Extended Reporting Period provided as described in
SECTION V – EXTENDED REPORTING PERIODS; and

d. The "claim" is timely reported pursuant to SECTION VI –
EMPLOYMENT PRACTICES LIABILITY CONDITIONS,
Paragraph B.

Doc. 1-1 at 98.

In addition, Section I.C provides:

Regulatory Investigations

We have, at our option, the right but not the obligation to
investigate and defend regulatory investigations or actions,
including but not limited to Equal Employment Opportunity
Commission actions (or the state equivalent) against the insured
prior to any "suit" being filed. . . .

The insured, however, must promptly notify us in accordance with
the requirements of SECTION VI. – EMPLOYMENT
PRACTICES LIABILITY CONDITIONS, Paragraph B. and
describe the circumstances surrounding each regulatory
investigation or action submitted for consideration under this
provision.

*Id.* at 99. With respect to notification of regulatory investigations or actions, Clause 4 of

Paragraph B of Section VI provides:

If, during the Policy Period any insured becomes aware of an
"employment practices wrongful act" which may reasonably result
in a future "claim" and notice is provided in writing to us of such
"employment practices wrongful act" prior to the end of the Policy
Period, then any "claim" subsequently arising from such
"employment practices wrongful act" shall be deemed to have
been made on the date notice of such "employment practices
wrongful act" was given to us. Such notice must describe the
"employment practices wrongful act" in reasonable detail, provide
the name of the potential claimant, the date, time and location of
the "employment practices wrongful act", contain the
circumstances by which the insured first became aware of the
"employment practices wrongful act" and particulars as to why the
insured can reasonably expect a "claim" as a result of such
"employment practices wrongful act". Notice of such "claim"
shall be given to us in writing as soon as practicable upon your
receipt of the "claim".

3

*Id.* at 106.

> The EPL Coverage includes a number of exclusions to coverage, including Exclusion L:

>> This insurance does not apply to "damages", "claims" or "suits" alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving:

>> . . . .

>> L. Prior Employment Practices Wrongful Act, Prior Insurance, Prior or Pending Litigation

>> . . . .

>> 3. Any "claim" deriving in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged:

>> a. Which were known to any insured; or

>> b. Were the subject of any prior or pending, legal action or litigation, administrative or regulatory proceeding, "claim", "suit", demand, arbitration, decree or judgment against any insured prior to the beginning of the Policy Period listed in the Declarations.

*Id.* at 99, 101.

> The EPL Coverage defines a "claim" as "a 'suit' or written demand seeking 'damages'

because of an alleged 'employment practices wrongful act'." *Id.* at 107. "Suit" is defined as:

>> a civil proceeding (other than a regulatory investigation or action, including but not limited to Equal Employment Opportunity Commission (EEOC) actions or the state equivalent) in which "damages" because of an "employment practices wrongful act" to which this coverage applies are alleged. "Suit" includes:

>> 1. An arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

>> 2. Any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our consent.

4

*Id.* at 110. With some exclusions not relevant here, "damages" means "judgments and settlements which the insured is legally obligated to pay as a result of an 'employment practices wrongful act' covered by" the policy. *Id.* at 108. The EPL Coverage defines "employment practices wrongful act" to include "employment-related offenses" such as discrimination, harassment, and retaliation. *Id.* at 108–09.

## II.     The Underlying Litigation

On September 15, 2017, Scatchell filed a discrimination charge with the Equal Employment Opportunity Commission (the "EEOC"), alleging that the Village retaliated against him for opposing unlawful or discriminatory practices while he worked for the Village as a lieutenant in the police department. Specifically, Scatchell complained that he engaged in protected activity by taking a stand against the Village's mistreatment of another police officer. Scatchell alleged that the Village, in retaliation, did not promote him to deputy chief, did not investigate an incident in which three-quarter sticks of dynamite were thrown at his house, changed his assignment, decreased his responsibilities, and excluded him from meetings.[3] Scatchell contended that, because of the retaliation, he "ha[d] endured and will suffer substantial financial loss, suffering, humiliation, emotional distress, and other damages in the past and the future." Doc. 1-3 at 6. Scatchell filed an amended charge with the EEOC on September 25, 2017. In the amended charge, Scatchell alleged that, after he filed the initial EEOC charge, he experienced continued retaliation and an intensified hostile work environment, which included the posting of accusations of rule violations against him on a community bulletin board. The Village responded to Scatchell's charges on November 21, 2017, denying Scatchell's allegations

---

[3] USSIC stated in the complaint that Scatchell's EEOC charge also alleged that the Village "attempted to pin a false case on Scatchell" and that "Scatchell's daughter was terminated as a FOP attorney." Doc. 1 ¶ 28(d)–(e). But these allegations do not appear in the EEOC charge, which controls over the contradictory allegations of the complaint. *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

of retaliation. Among other things, the Village contended that Scatchell did not engage in protected activity and did not pursue his claim through the proper administrative channels. On March 9, 2018, the EEOC issued a Dismissal and Notice of Rights, indicating the EEOC could not determine whether a statutory violation occurred.

Scatchell filed the underlying lawsuit on June 7, 2018. In the underlying lawsuit, Scatchell alleges that the Village Defendants engaged in First Amendment retaliation and retaliated against Scatchell in violation of 42 U.S.C. § 1981 based on the same protected activity raised in his EEOC charge. He also claims that the Village maintains an unconstitutional policy or practice of retaliation and that the individual defendants engaged in a conspiracy to commit retaliation. The complaint includes many of the same alleged instances of retaliation as those Scatchell raised in his EEOC charges but also includes the Village Defendants' alleged attempts to pin a false case on Scatchell, retaliation against Scatchell's son, and Scatchell's daughter's termination as the Village FOP's attorney.

On July 2, 2018, USSIC received notice that the Village Defendants seek coverage under the 2017-2018 Policy for the underlying lawsuit. On July 6, 2018, USSIC informed the Village Defendants that it would furnish a defense subject to a complete reservation of rights. After receiving copies of Scatchell's EEOC charge and related materials, USSIC advised the Village Defendants on April 4, 2019 that it did not owe the Village Defendants coverage under the 2017-2018 Policy based on Exclusion L of the EPL Coverage.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the complaint and answer have been filed. Fed. R. Civ. P. 12(c). When the movant seeks to "dispose of the case on the basis of the underlying substantive merits . . . the

appropriate standard is that applicable to summary judgment, except that the court may consider only the contents of the pleadings." *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993). The pleadings include the complaint, answer, and documents attached as exhibits to the complaint and answer. *N. Ind. Gun & Outdoor Shows, Inc.*, 163 F.3d at 452–53. The Court should grant a motion for judgment on the pleadings if "no genuine issues of material fact remain to be resolved" and the movant "is entitled to judgment as a matter of law." *Alexander*, 994 F.2d at 336.

## ANALYSIS

To determine if an insurer has a duty to defend, the Court "must compare the facts alleged in the underlying complaint to the relevant provisions of the insurance policy." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363 (2006).[4] The duty to defend is broader than the duty to indemnify, and an insurer may have to defend its insured even though coverage may not ultimately be found. *See Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 456–58 (2010). An insurer may only refuse to defend if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Valley Forge*, 223 Ill. 2d at 363. Where an insurer denies coverage based on an exclusion, the exclusion's application must be "clear and free from doubt." *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015) (quoting *Hurst-Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995)). The insurer bears the burden of proving that an exclusion applies. *Id.* at 721. The Court

---

[4] The parties agree that Illinois law applies to the insurance coverage issues before the Court. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991))).

must resolve any doubts as to the duty to defend in the insured's favor. *Hilco Trading, LLC v. Liberty Surplus Ins. Corp.*, 2014 IL App (1st) 123503, ¶ 25.

The parties' dispute in this case revolves around the enforceability and applicability of Exclusion L of the EPL Coverage. As relevant here, Exclusion L provides that the EPL Coverage does not apply to:

> 3. Any "claim" deriving in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged:
>
> a. Which were known to any insured; or
>
> b. Were the subject of any prior or pending, legal action or litigation, administrative or regulatory proceeding, "claim", "suit", demand, arbitration, decree or judgment against any insured prior to the beginning of the Policy Period listed in the Declarations.

Doc. 1-1 at 101. USSIC argues that (1) Clause 3a applies because the Village Defendants knew of the facts underlying Scatchell's claim before the inception of the 2017-2018 Policy and (2) Clause 3b applies because the claim derives from Scatchell's EEOC charges. Conversely, the Village Defendants contend that the Court should find Exclusion L unenforceable or inapplicable to the underlying lawsuit. The Court first addresses whether the underlying lawsuit has the required factual nexus to the allegations in Scatchell's EEOC charges and then proceeds to consider the enforceability and applicability of Clauses 3a and 3b.

### A. Required Relationship of the Underlying Lawsuit to the Allegations in Scatchell's EEOC Charges

Because both Clause 3a and Clause 3b require the "claim" to "deriv[e] . . . from any fact, series of facts or circumstances, or matters asserted or alleged," *id.*, the Court first addresses whether the underlying lawsuit derives from the facts or circumstances asserted in Scatchell's EEOC charges. The Village Defendants argue that the required connection does not exist because the underlying lawsuit is broader than Scatchell's EEOC charges. They point

specifically to allegations in the underlying lawsuit about the Village's investigation of Scatchell's son, the termination of Scatchell's daughter as the FOP attorney, and an attempt to pin a case on Scatchell.

The Village Defendants seek to impose a strict identity limitation on Exclusion L. But Exclusion L only requires that the claim "deriv[e] in whole *or in part*" from facts or circumstances that were either known to an insured or the subject of prior actions. *Id.* (emphasis added). Although the allegations the Village Defendants highlight do not appear in the EEOC charges, many of the retaliatory acts of which Scatchell complains in the underlying lawsuit do appear in the EEOC charges. For example, both the EEOC charges and the underlying lawsuit allege that the Village did not promote Scatchell, did not investigate the dynamite incident, and changed his assignment and job responsibilities. Further, Scatchell complains in both the EEOC charges and the underlying lawsuit that the Village took these actions in retaliation for the same protected activity. The underlying lawsuit clearly "deriv[es] . . . in part" from the facts and circumstances set forth in Scatchell's EEOC charges, providing the factual nexus required by Clauses 3a and 3b. *Id.*

### B. Clause 3a

The parties contest the applicability of Clause 3a, which precludes coverage for claims "deriv[ed] in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged" that "were known to any insured." *Id.* USSIC contends that the Village knew of the facts and circumstances surrounding the underlying lawsuit before the 2017-2018 Policy's effective date (December 22, 2017) because Scatchell submitted his EEOC charges in September 2017 and the Village responded to those charges in November 2017.

The Village Defendants respond that Clause 3a is overbroad and renders coverage illusory because, "under USSIC's formulation, knowledge of any fact, series of facts or circumstances prior to the inception of the policy period that comprises a subsequent 'claim' is enough to trigger Exclusion L." Doc. 25 at 12. They maintain that, under Clause 3a, even "long-held knowledge about the most basic information such as that an employee was terminated or passed over for promotion would be sufficient to activate Exclusion L." *Id.* The Village Defendants also contend that this broad reading of Clause 3a makes it incompatible with the fact that the EPL Coverage has no retroactive date, which they maintain means that the parties intended the EPL Coverage to apply as long as the Village made and reported a claim during the policy period, regardless of when the facts underlying the claim occurred.

The Court agrees with the Village Defendants that Clause 3a is substantially broader than prior knowledge exclusions typically found in insurance policies, which generally limit their application to facts or circumstances an insured reasonably expects to give rise to a claim. Indeed, all the prior knowledge cases USSIC cites in support of the application of Clause 3a dealt with exclusions that required the insured to have an expectation that a claim may arise from specific facts or circumstances. *See, e.g.*, *Ann Arbor Pub. Schs. v. Diamond State Ins. Co.*, 236 F. App'x 163, 164, 166 (6th Cir. 2007) (prior knowledge exclusion stated that policy did not cover any claim "based on any circumstance or fact known at the time of the application which any Insureds could reasonably expect would result in a claim"); *Cardenas v. Twin City Fire Ins. Co.*, No. 13 C 8236, 2014 WL 4699670, at *4 (N.D. Ill. Sept. 24, 2014) (prior knowledge exclusion provided that the policy did not cover claims if the insured "knew or could have reasonably foreseen" that the "negligent acts, errors, or omissions . . . might be expected to be the basis of a claim"). If Clause 3a included this limitation, no question would exist as to its

10

enforceability. "Like the exclusion of a known preexisting condition from a health insurance policy, the exclusion from a claims-only policy of claims based on conduct that occurred before the policy was issued and that was known to have claim potential is uncontroversially proper." *Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787, 791 (7th Cir. 1992).

That Clause 3a does not limit its application to knowledge of facts or circumstances likely to give rise to a claim does not make the policy illusory, however. An insurance policy is illusory under Illinois law if "there is no possibility under any set of facts for coverage." *Atl. Specialty Ins. Co. v. AC Chicago, LLC*, 272 F. Supp. 3d 1043, 1051 (N.D. Ill. 2017) (citation omitted); *see also Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 362 Ill. App. 3d 745, 754 (2005) ("The policy need not provide coverage against all possible liabilities; if it provides coverage against some, the policy is not illusory."), *aff'd*, 223 Ill. 2d 407 (2006). As written, Clause 3a does not exclude coverage when the facts giving rise to the claim occur in the same policy year as the claim. Therefore, enforcement of Clause 3a does not render the policy illusory. *See Darwin Nat'l Assurance Co. v. Hellyer*, No. 10 C 50224, 2011 WL 2259801, at *4 (N.D. Ill. June 7, 2011) (because prior knowledge condition did not have an "impact on coverage for claims that are based on conduct occurring within the policy period," the policy did not provide illusory coverage).

This conclusion is underscored by considering Clause 3a in light of the EPL Coverage as a whole. *See Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153 (2004) ("An insurance policy, like any contract, is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose."). Clause 4 of Paragraph B of Section VI provides that, when an insured becomes aware of an employment practices wrongful act that could result in a claim, the insured may provide notice at

11

that time. This clause then deems any claim that subsequently arises from that reported act as made on the date the insured provided notice of the employment practices wrongful act. When read in combination with this provision, Clause 3a does not "effectively eviscerate[ ] a significant portion of the expected coverage" or otherwise undermine the parties' expectations given the lack of a retroactivity date. Doc. 33 at 6. As USSIC points out, the Village Defendants could have given USSIC notice under the 2016-2017 Policy at the time they learned of the alleged wrongful acts through Scatchell's EEOC charge. Given the unambiguous, clear, and specific provisions of the EPL Coverage, the Village Defendants must live with their failure to do so. *See Diamond State*, 236 F. App'x at 167 ("The fact that Diamond State could have provided a more clear and specific exclusionary clause, such as the one provided by Deerfield Insurance Company, is immaterial. An exclusionary clause need not be the most clear and specific possible; it need only be unambiguous and *sufficiently* clear and specific."). Because the Village Defendants knew of the facts from which, at least in part, the underlying lawsuit derived prior to the effective date of the 2017-2018 Policy, Clause 3a bars coverage for the underlying lawsuit.

The Court's conclusion also would not change under the Village Defendants' preferred construction of Clause 3a. Although the language of Clause 3a focuses solely on the insured's knowledge, the Village Defendants argue that the clause requires a two-step inquiry, considering (1) whether the Village Defendants knew of the facts and circumstances of the underlying lawsuit, and (2) whether the Village Defendants knew or reasonably could expect that a claim would result from those facts and circumstances. The Village Defendants claim that Scatchell's EEOC charge did not necessarily put the Village on notice of a prospective lawsuit because "an EEOC charge does not inevitably lead to a lawsuit in court." *John Marshall Law Sch. v. Nat'l*

*Union Fire Ins. Co. of Pittsburgh*, 223 F. Supp. 3d 733, 737 (N.D. Ill. 2016). But the Court does not read *John Marshall* as broadly as the Village Defendants. *John Marshall* did not consider the question of reasonable expectations but rather whether an EEOC charge and a lawsuit, which both qualified as claims under the policy at issue, amounted to one claim or separate claims. *Id.* at 736. Under the Village Defendants' preferred construction of Clause 3a, the question is whether Scatchell's EEOC charge "could create the expectation in a reasonable [insured] that a claim might be forthcoming." *Cardenas*, 2014 WL 4699670, at *5. Although an EEOC charge does not guarantee a subsequent lawsuit, upon receipt of an EEOC charge, a reasonable person could nonetheless expect a potential claim to arise from the same set of facts. *See Diamond State*, 236 F. App'x at 167 ("AAPS reasonably could have expected that the EEOC charges would result in a claim[.]"); *City of Brentwood v. Northland Ins. Co.*, 397 F. Supp. 2d 1143, 1147 (E.D. Mo. 2005) (insured could reasonably foresee that a claim might be made against it given its employee's filing of EEOC discrimination charges). That is particularly the case here, where Scatchell's initial EEOC charge refers to the monetary damages he allegedly suffered as a result of retaliation. Therefore, the Court finds it appropriate to apply Clause 3a of Exclusion L to bar coverage for the underlying lawsuit.

      C.    **Clause 3b**

      For purposes of completeness, the Court also addresses the parties' arguments about the applicability of Clause 3b. Clause 3b of Exclusion L bars coverage for claims that "deriv[e] in whole or in part, from any fact, series of facts or circumstances, or matters asserted or alleged . . . [that] [w]ere the subject of any prior or pending, legal action or litigation, administrative or regulatory proceeding, 'claim', 'suit', demand, arbitration, decree or judgment against any insured prior to the beginning of the Policy Period listed in the Declarations." Doc. 1-1 at 101.

The parties disagree as to whether the EEOC investigation into Scatchell's charges amounts to an "administrative or regulatory proceeding."

First, the Village Defendants contend that an "administrative or regulatory proceeding" must fall within the EPL Coverage's definition of a "claim" because that definition subsumes every other type of action listed in Clause 3b. Under this reading of Clause 3b, an EEOC investigation cannot qualify as an administrative or regulatory proceeding because it does not involve a suit or demand for monetary damages, which is required by the EPL Coverage's definition of a "claim." The plain language of the EPL Coverage does not support the Village Defendants' reading, however. Initially, if Clause 3b only reached prior claims, it would only need to use that defined term instead of listing it as one option among many. But because Clause 3b includes other undefined terms in addition to "claim" and "suit," the Court must give these terms separate meaning so as not to render their use superfluous. *See Cincinnati Ins. Co. v. Gateway Constr. Co.*, 372 Ill. App. 3d 148, 152 (2007) ("A policy must not be interpreted in a manner that renders provisions of the policy meaningless."). Additionally, the fact that these additional terms are undefined does not make them ambiguous. *Sanders v. Ill. Union Ins. Co.*, 2019 IL 124565, ¶ 23. In using terms commonly understood to encompass actions reaching beyond a "claim" as defined in the EPL Coverage—such as arbitration, litigation, and proceeding—Clause 3b further makes clear that a prior or pending administrative or regulatory proceeding need not meet the EPL Coverage's "claim" definition.[5] *See, e.g.*, "Arbitration," Black's Law Dictionary ("A dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute.");

---

[5] Scatchell's EEOC charge foreshadows a damages request, stating that "[a]s a proximate result of the unlawful discrimination, Lt. Scatchell has endured and will suffer substantial financial loss, suffering, humiliation, emotional distress, and other damages in the past and the future." Doc. 1-3 at 6. The Court notes that this could amount to a written demand for damages that brings the EEOC investigation within even the Village Defendants' reading of Clause 3b.

"Litigation," Black's Law Dictionary ("The process of carrying on a lawsuit."); "Proceeding," Black's Law Dictionary ("1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing.").

This does not end the inquiry, however, because the Village Defendants also argue that the EPL Coverage distinguishes between a "regulatory investigation" and an "administrative or regulatory proceeding." The Village Defendants maintain that a regulatory investigation includes Scatchell's EEOC charges, whereas an administrative or regulatory proceeding would require the EEOC to have filed a judicial or administrative case against the Village based on those charges, which it did not do. Under the EPL Coverage, USSIC has "the right but not the obligation to investigate and defend regulatory investigations or actions, including but not limited to Equal Employment Opportunity Commission (EEOC) actions (or the state equivalent) against the insured prior to any 'suit' being filed." Doc. 1-1 at 99. The EPL Coverage further defines suit as "a civil proceeding (other than a regulatory investigation or action, including but not limited to Equal Employment Opportunity Commission (EEOC) actions or the state equivalent)." *Id.* at 110. Clause 3b refers to an "administrative or regulatory proceeding," not a "regulatory investigation or action." *Id.* at 101.

But the Court does not find that the EPL Coverage's use of different terms creates an ambiguity or excludes a regulatory investigation or action from the scope of Clause 3b. The Village Defendants rely on *Office Depot, Inc. v. National Union Fire Insurance Co. of Pittsburgh*, 734 F. Supp. 2d 1304 (S.D. Fla. 2010), to support their argument that a regulatory investigation or action and an administrative or regulatory proceeding are mutually exclusive

terms. In *Office Depot*, the policy differentiated between a "proceeding against" and an "investigation of" an organization in defining the term "Securities Claim." *Id.* at 1315, 1317–18. The court found that "[i]f the parties intended the term 'proceeding against,' in the context of the Section 2(y) 'carve back' clause, to include an 'investigation of' the Organization, formal or informal, it would be pointless to distinguish between these terms in defining what constitutes a covered 'Securities Claim.'" *Id.* at 1318. But unlike in *Office Depot*, where the policy required a unique construction of the two terms, the EPL Coverage does not require reading administrative or regulatory proceeding to exclude a regulatory investigation or action. Instead, the plain and ordinary meaning of an administrative or regulatory proceeding includes an investigation like that conducted by the EEOC here. "Administrative Proceeding," Black's Law Dictionary ("A hearing, inquiry, investigation, or trial before an administrative agency, usu. adjudicatory in nature but sometimes quasi-legislative."); *see Am. Ctr. for Int'l Labor Solidarity v. Fed. Ins. Co.*, 548 F.3d 1103, 1104–06 (D.C. Cir. 2008) (treating the EEOC's investigation of a charge as a "formal administrative or regulatory proceeding"); *Nichols v. Muskingum Coll.*, 318 F.3d 674, 680–81 (6th Cir. 2003) (filing of EEOC charge qualified as the institution of proceedings with a state charging agency); *LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2003 No. 1560, 2006 WL 689109, at *5 (Pa. Ct. Com. Pl. Mar. 1, 2006) (filing of EEOC charge begins an administrative proceeding).

Because the underlying lawsuit derives in part from the facts or circumstances in Scatchell's EEOC charges, Clause 3b of Exclusion L also bars coverage. Therefore, USSIC has no duty to defend or indemnify the Village Defendants in the underlying lawsuit.

**CONCLUSION**

For the foregoing reasons, the Court grants USSIC's motion for judgment on the pleadings [26] and denies the Village Defendants' motion for judgment on the pleadings [25]. The Court grants USSIC's motion to dismiss John Scatchell [36]. The Court dismisses Scatchell as a Defendant pursuant to Scatchell's stipulation to be bound by the final judgment in this case. The Court enters judgment for USSIC on its complaint and the Village Defendants' counterclaim. Case terminated.

Dated: April 21, 2020

_____
SARA L. ELLIS
United States District Judge

17